**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OLIVE JACKSON,** | : | |
| | : | **Civil No. 1:13-CV-1349** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WELLSPAN HEALTH,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The virtue of consistent candor is a cardinal value in life, and litigation.  This case comes before us on a motion to dismiss filed by the defendant, which invites us to invoke the doctrine of judicial estoppel, a form of judicial sanction designed to promote consistent candor, to dismiss this case a sanction for alleged inconsistencies in positions taken by the plaintiff in course of this litigation and a separate bankruptcy petition which she has filed.  The defendant makes this request at the outset of this litigation to preclude the plaintiff, Olive Jackson, as a matter of law from pursuing this employment discrimination action which she filed in May of 2013, based upon representations which she is alleged to have made during bankruptcy proceedings in 2008, representations which Jackson allegedly failed to correct in 2011, three years after her initial bankruptcy filing and two years prior to filing this lawsuit.

While the defendants aptly notes an apparent inconsistency between some of these representations made by Jackson at different times over the past five years, for the reasons set forth below, we conclude that imposing the sanction of judicial estoppel based solely upon this alleged inconsistency in the pleadings would be inappropriate at this stage of these proceedings. Therefore, we will deny this motion to dismiss.

## II.    **Statement of Facts and of the Case**

The doctrine of judicial estoppel is premised on the concept of culpable inconsistency, the idea that parties should not be able to materially shift their positions in litigation in an expedient fashion that favors tactical advantage over the truth. In order to promote consistent candor in litigation, judicial estoppel permits courts to sanction parties who adopt irreconcilably inconsistent positions in litigation by precluding them from pursuing claims that are wholly inconsistent with the positions they have previously taken in some other lawsuit. Given the fundamental nature of this inquiry, an assessment of whether judicial estoppel should apply in a particular case entails both an understanding of the positions taken by a party over time in various litigation and an assessment of the parties' subjective intent.

In this case, WellSpan seeks to assert the doctrine judicial estoppel as grounds to dismiss Jackson's 2013 employment discrimination lawsuit, citing alleged

inconsistencies between the claims in this 2013 litigation and averments Jackson made

in the course of bankruptcy proceedings that began in 2008, five years prior to the

filing of the instant lawsuit.   With respect to the chronology of these alleged

inconsistencies, the court records appear to reveal the following:

On November 13, 2008, Jackson filed a counseled voluntary Chapter 13

bankruptcy petition with the United States Bankruptcy Court for the Middle District

of Pennsylvania. (Doc. 14-1, Ex. B)  In connection with this bankruptcy proceeding,

on December 29, 2008, Jackson, through counsel, filed a schedule of assets and

liabilities.  (Id.)

While this December 29, 2008, schedule did not list her potential claims against

WellSpan in this employment discrimination lawsuit as an asset, we find nothing

nefarious about this initial filing since Jackson's lawsuit had not been filed, and would

not be filed for another 4 ½ years.  Moreover, it would have been impossible for

Jackson to have identified this potential claim as an asset in December 2008 since her

2013 lawsuit reveals that, with one exception,[1] the alleged acts of discrimination

which form the basis for this lawsuit occurred between the Fall of 2010 and February

2011, several years after this initial bankruptcy filing.

---

[1]That one exception relates to a July 2008 counseling episode that was
described by Jackson in the her initial 2013 federal civil rights complaint, (Doc.
1), but which was subsequently omitted from her amended complaint, (Doc. 11),
and thus no longer forms part of the instant litigation.

According to the amended complaint filed by Jackson in 2013, several years after she initially filed for bankruptcy, in the Fall of 2010 and early 2011, she experienced alleged acts of discrimination at the hands of her employer, WellSpan, acts which culminated in February of 2011 with notice from WellSpan that it intended to terminate Jackson's employment.  (Doc. 11, ¶¶20-30)  As these events unfolded, Jackson' bankruptcy proceedings also progressed, with Jackson filing a motion on March 22, 2011, to convert her Chapter 13 bankruptcy into a Chapter 7 bankruptcy proceeding.  (Doc. 14-1)  That motion was granted the following day, March 23, 2011. (Id.)

At the time of these events, Jackson may have had an on-going duty to disclose any additional assets which she had acquired since her initial bankruptcy filing to the creditors in this bankruptcy proceedings.  When Jackson filed her counseled motion to convert this bankruptcy from Chapter 13 to a Chapter 7 proceeding, it is undisputed that she did not disclose any potential claims she possessed against WellSpan to her creditors.  It is also undisputed, however, that Jackson had not yet initiated any claims against WellSpan in March 2011, either in federal court or through the EEOC.  Rather, it appears that by March 2011, Jackson had simply been notified that her employer was seeking to terminate her, and was pursuing internal workplace grievance procedures relating to this proposed job action.

According to the amended complaint filed in Jackson's 2013 federal civil rights lawsuit, by July 2011, she was terminated by WellSpan.   In the wake of this termination, on August 9, 2011, Jackson then began the process of pursuing employment discrimination claims against her former employer by filing an administrative charge of discrimination with the EEOC.   (Doc. 14-1, Ex. A) Approximately one month later, on September 7, 2011, Jackson's bankruptcy was discharged, and her bankruptcy case was terminated on September 12, 2011.  (Doc. 14-1)  According to the bankruptcy docket, approximately $700,000 in debts were discharged in these bankruptcy proceedings.   Jackson, who was represented by counsel throughout these proceedings, did not disclose that she had commenced administrative proceedings against WellSpan with the EEOC one month earlier in August of 2011, prior to this September 2011 bankruptcy discharge.

Some 18 months then passed before Jackson initiated this lawsuit by filing a complaint in federal court on May 16, 2013.  (Doc. 1)  Jackson's initial complaint alleged that she was first subjected to acts of discrimination by WellSpan in July 2008. (Id.)  According to Jackson's complaint this workplace discrimination accelerated in the Fall of 2010 and early 2011, culminating in her discharge in July 2011.  WellSpan responded to this initial complaint by filing a motion to dismiss based on judicial estoppel, a motion which cited the alleged inconsistencies between Jackson's bankruptcy filing disclosures and her claims in this lawsuit.  (Docs. 6 and 7)  Jackson

then amended her complaint, (Doc. 11), deleting any reference to allegations of discrimination which pre-dated her 2008 bankruptcy filing, thus effectively abandoning these pre-bankruptcy filing claims.  Jackson's amended complaint also pleaded facts relating to her bankruptcy case, alleging that her initial filings in this bankruptcy occurred prior to the accrual of the claims set forth in this lawsuit, (Doc. 11, ¶¶16-19), and further asserting that her failure to disclose these nascent and inchoate claims in 2011 represented a good faith, counseled action on her part based upon her understanding that these matters were not subject to disclosure in bankruptcy.  (Id., ¶¶28-30.)

Presented with this amended complaint, WellSpan renewed its motion to dismiss on judicial estoppel grounds.  (Doc. 13)  This motion has been fully briefed by the parties, (Docs. 14, 16, and 17), and is ripe for resolution.

For the reasons set forth below the motion to dismiss will be denied without prejudice.

## II.    Discussion

### A.    Standard of Review

While the defendant has moved to dismiss this amended complaint on judicial estoppel grounds, there is some ambiguity regarding the precise legal basis for this motion.  WellSpan's initial motion to dismiss sought to dismiss the complaint pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure; (Doc.5), WellSpan's current motion is silent as to the jurisdictional basis for this motion.  (Doc. 13)  WellSpan's procedural uncertainty on this particular point is also reflected in caselaw which has has debated whether a motion to dismiss based upon judicial estoppel is a jurisdictional challenge to the validity of the complaint under Rule 12(b)(1), or falls in the nature of a more general attack upon the complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  See Idearc Media LLC v. Glassman, CIV.A. 10-1216, 2011 WL 570017 (E.D. Pa. Feb. 15, 2011)(" [defendant] frames his judicial estoppel argument as part of his 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  Because judicial estoppel is an affirmative defense that does not attack jurisdiction, his argument is more properly considered under Rule 12(b)(6).")

For its part,  Rule 12(b)(1) permits the dismissal of an action for "lack of subject matter jurisdiction."  A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977).  In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.  See id.; PBGC v. White, 998 F.2d 1192, 1196 (3d Cir.1993).  In reviewing a factual attack on subject matter jurisdiction, the court may also consider undisputed evidence outside

the pleadings.  See Gotha v. United States, 115 F.3d 176, 178-79 (3d Cir.1997) (citing

Mortensen, 549 F.2d at 891).  Gould Electronics Inc. v. United States, 220 F.3d 169,

176 (3d Cir. 2000)(footnote omitted) holding modified on other gr'ds  by Simon v.

United States, 341 F.3d 193 (3d Cir. 2003).

Rule 12(b)(6) of the  Federal Rule of Civil Procedure, in turn,  provides for the

dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon

which relief can be granted.  The moving party bears the burden of showing that no

claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and

dismissal is appropriate only if, accepting all of the facts alleged in the complaint as

true, the plaintiff has failed to plead "enough facts to state a claim to relief that is

plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)

(abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46

(1957)).  The facts alleged must be sufficient to "raise a right to relief above the

speculative level." Twombly, 550 U.S. 544, 555.  This requirement "calls for enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence" of

necessary elements of the plaintiff's cause of action.  Id. at 556.  Furthermore, in order

to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.  Phillips v.

County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks

–8–

omitted) (quoting <u>Twombly</u>, 550 U.S. at 555).  Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.  <u>See Iqbal</u>, 556 U.S. at 678–79, 129 S.Ct. 1937; <u>Twombly</u>, 550 U.S. at 555–57, 127 S.Ct. 1955; <u>Burtch</u>, 662 F.3d at 220–21."  <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 681 (3d Cir. 2012).

In assessing a motion to dismiss under Rule 12(b)(6) the court engages in a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>,  998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents

are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.")  However, the court may not rely on other parts of the record in determining a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Ultimately, then, whether cast as a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), the scope of our review is essentially confined to the pleadings, and other undisputed, authentic records and documents.  Thus, we may not foray beyond these pleadings and documents when divining whether Jackson's conduct reached the level of culpable inconsistency which permits imposition of the sanction of judicial estoppel as a to bar this lawsuit.

### B.    Elements of a Judicial Estoppel Claim

The doctrine of judicial estoppel is premised upon the inherent power of the court to punish misfeasance by parties.  Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108 (3d Cir. 1999).  "When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took

before a court or agency." Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001). While decisions regarding the application of judicial estoppel rest in the sound discretion of the court, id., that discretion is guided by certain basic principles. At the outset:

> Three requirements must be met before a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. See Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir.1996). Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." Id. Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. Klein, 185 F.3d at 108 (quotation marks and citation omitted).

Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001). Further, given the severe nature of this sanction–which precludes a party from pursuing a claim–it is well settled that: "Inconsistencies are not sanctionable unless a litigant has taken one or both positions 'in bad faith—i.e., with intent to play fast and loose with the court.' Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir.1996)." Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 780-81 (3d Cir. 2001). "Judicial estoppel is, therefore, not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be. See In re Chambers Development Co., Inc., 148 F.3d 214 (3rd Cir.1998)." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003).

Instead, "the doctrine should only be applied to avoid a miscarriage of justice." <u>Id</u>.

Moreover, in this context:

> A finding of bad faith "must be based on more than" the existence of an inconsistency, <u>Klein v. Stahl GMBH & Co. Maschinefabrik</u>, 185 F.3d 98, 111 (3d Cir.1999) (emphasis added); indeed, a litigant has not acted in "bad faith" for judicial estoppel purposes unless two requirements are met. First, he or she must have behaved in a manner that is somehow culpable. <u>See</u> <u>Ryan Operations</u>, 81 F.3d at 362 (stating that judicial estoppel may not be employed unless " 'intentional self contradiction is ... used as a means of obtaining *unfair* advantage' " (quoting <u>Scarano v. Central R. Co. of N.J.</u>, 203 F.2d 510, 513 (3d Cir.1953) (emphasis added))); <u>id</u>. ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional *wrongdoing*." (emphasis added)); <u>see also</u> <u>In re Chambers Dev. Co. Inc.</u>, 148 F.3d 214, 229 (3d Cir.1998) (quoting this language from <u>Ryan Operations</u>). Second, a litigant may not be estopped unless he or she has engaged in culpable behavior *vis-a-vis* the court. As we have stressed time and time again, judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other. <u>See, e.g.</u>, <u>Ryan Operations</u>, 81 F.3d at 360 ("Judicial estoppel 'is intended to protect the courts rather than the litigants.' " (quoting <u>Fleck v. KDI Sylvan Pools, Inc.</u>, 981 F.2d 107, 121–22 (3d Cir.1992))); <u>Delgrosso v. Spang & Co.</u>, 903 F.2d 234, 241 (3d Cir.1990) (same). Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court.

<u>Montrose Med. Grp. Participating Sav. Plan v. Bulger</u>, 243 F.3d 773, 781 (3d Cir. 2001).

Finally, in the exercise of our discretion in this field we are mindful of the fact that: "judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct, [and therefore] a district court may not invoke the doctrine unless: (1) 'no sanction established by the Federal Rules or a pertinent statute is up

to the task of remedying the damage done by a litigant's malfeasance;' and (2) 'the sanction [of judicial estoppel] is tailored to address the harm identified.' <u>Klein v. Stahl GMBH & Co. Maschinefabrik</u>, 185 F.3d 98, 108, 110 (3d Cir.1999)(internal quotation marks and citations omitted)." <u>Montrose Med. Grp. Participating Sav. Plan v. Bulger</u>, 243 F.3d 773, 784 (3d Cir. 2001).

Because application of judicial estoppel entails an assessment of a party's bad faith, the resolution of such estoppel claims often involve matters beyond the pleadings. Therefore, while "a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes ... two precepts are nevertheless clear. First, a court considering the use of judicial estoppel should ensure that the party to be estopped has been given a meaningful opportunity to provide 'an explanation' for its changed position. <u>Cleveland v. Policy Management Sys.</u>, 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Second, though a court may sometimes 'discern' bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts." <u>Coast Auto. Grp., Ltd. v. VW Credit, Inc.</u>, 34 F. App'x 818, 824 (3d Cir. 2002)

These questions of judicial estoppel often arise in a bankruptcy context. When a plaintiff brings a lawsuit relating to events which allegedly took place while the plaintiff was in bankruptcy, defendants frequently invite the courts to invoke judicial

estoppel and bar claims brought by litigants which are inconsistent with their prior bankruptcy filings.  In some instances, courts have embraced these claims, finding bad faith concealment and relying upon judicial estoppel to bar plaintiffs from pursuing claims that are irreconcilably inconsistent with their bankruptcy filings.  See e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003); Oneida Motor Freight v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1998); Castillo v. Coca-Cola Bottling Co. of Eastern Great Lakes, No. 06-183, 2006 U.S. Dist.LEXIS 32062 (E.D. Pa. May 22, 2006); Clark v. Strober-Haddonfield Group Inc., No. 07-910 (RBK), 2008 U.S. Dist. LEXIS 58865, at *8–*9 (D.N.J. July 29, 2008); Depiano v. Atlantic County, No. 02-5441 (RBK), 2004 U.S. Dist. LEXIS 31501, at *19 (D.N.J. Dec. 3, 2004).  In other instances, courts have rebuffed these claims, finding instead that there was no bad faith inconsistency between the plaintiffs' representations in bankruptcy filings and their statements in subsequent litigation.  See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 356 (3d Cir. 1996); Benjamin v. Nat'l R.R. Passenger Corp., CIV.A. 09-4885, 2011 WL 2036702 (E.D. Pa. May 23, 2011); Idearc Media LLC v. Glassman, CIV.A. 10-1216, 2011 WL 570017 (E.D. Pa. Feb. 15, 2011).

Two factors often account for these differing outcomes.  At the outset, in some instances the procedural posture of the litigation may determine the outcome of a judicial estoppel claim since courts are understandably reluctant to assert judicial

estoppel on the pleadings alone, particularly where those pleadings reveal an underlying factual dispute between the parties. Benjamin v. Nat'l R.R. Passenger Corp., CIV.A. 09-4885, 2011 WL 2036702 (E.D. Pa. May 23, 2011); Idearc Media LLC v. Glassman, CIV.A. 10-1216, 2011 WL 570017 (E.D. Pa. Feb. 15, 2011).

More fundamentally, these differing outcomes are often a function of a single, simple, consideration: In every instance, "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010). Therefore, the unique factual context of each case often suggests how this broad discretion should be exercised.

### C.   The Defendant's Motion to Dismiss Will be Denied Without Prejudice

Applying these benchmarks, in the exercise of our discretion we conclude that WellSpan's motion to dismiss on judicial estoppel grounds should be denied at this time without prejudice to renewal of this claim on a fully developed factual record, if appropriate. In reaching this conclusion, we note at the outset that the procedural posture of this case, which comes before us on a motion to dismiss, limits the scope of our review to the pleadings themselves, and to those undisputed court filings acknowledged by the parties. Recognizing that questions of judicial estoppel turn on a party's bad faith, we are unable to make any findings regarding the subjective intent

of the plaintiff at this time on the limited factual record before us, since the contrasting positions of the parties rest upon what are plainly disputed issues of fact.

Thus, while the defendant has shown an apparent failure by Jackson to disclose in her bankruptcy proceedings what was a nascent and inchoate claim in the summer of 2011, the pleadings also reflect Jackson's representation that she was acting in good faith and was relying upon the advice of counsel in making her bankruptcy disclosures.  Further, we note that, unlike some judicial estoppel cases, this particular case does not involve two clear, and clearly inconsistent, affirmative representations by a party, a setting where the irreconcilably contradictory statements of a litigant compel an inference of bad faith.  Instead, the inconsistency cited here by WellSpan relates to a matter of omission rather than commission, the alleged failure to timely update her bankruptcy schedules to include an inchoate claim.  Mindful of the fact that "though a court may sometimes 'discern' bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts," Coast Auto. Grp., Ltd. v. VW Credit, Inc., 34 F. App'x 818, 824 (3d Cir. 2002), we conclude that the application of judicial estoppel to this case entails resolution of factual disputes, something that cannot be undertaken through a motion to dismiss.  See, e.g., Benjamin v. Nat'l R.R. Passenger Corp., CIV.A. 09-4885, 2011 WL 2036702 (E.D. Pa. May 23,

2011)(denying motion to dismiss); <u>Idearc Media LLC v. Glassman</u>, CIV.A. 10-1216, 2011 WL 570017 (E.D. Pa. Feb. 15, 2011)(same).

Further, recognizing that "judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct," <u>Montrose Med. Grp. Participating Sav. Plan v. Bulger</u>, 243 F.3d 773, 784 (3d Cir. 2001), we conclude that the defendant has not shown that: (1) "no sanction established by the Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's malfeasance;" and (2) that "the sanction [of judicial estoppel] is tailored to address the harm identified." <u>Klein v. Stahl GMBH & Co. Maschinefabrik</u>, 185 F.3d 98, 108, 110 (3d Cir.1999) (internal quotation marks and citations omitted). In short, even if we ultimately found a culpable inconsistency on the facts presented here, we may nonetheless be able to fashion remedies that fall short of complete preclusion of this claim. Since we cannot determine on this incomplete factual record whether this was culpable, bad faith conduct on Jackson's part, and further cannot assess whether we can tailor narrower sanctions in this case to address the Court's institutional interest in promoting consistent candor we will deny this motion to dismiss.

Yet, while we deny this motion at the present time, we fully recognize the important values in terms of candor to the tribunal that have led other courts, on different and more fulsome facts, to apply judicial estoppel in cases where there has been a finding of bad faith in connection with inconsistent bankruptcy and district

court filings.  Therefore, we will deny this motion, without prejudice to the defendant subsequently pursuing this claim in discovery and through a fully-documented motion for summary judgment, if appropriate.

**IV.   Conclusion**

Accordingly, for the foregoing reasons, the defendant's motion to dismiss, (Doc. 13), is denied without prejudice to renewal of this judicial estoppel claim through a fully documented motion for summary judgment.

So ordered this 4th day of February, 2014.

> *S/Martin C.  Carlson*
> Martin C. Carlson
> United States Magistrate Judge